THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD
COMPANY

v.

THE CENTRAL STOCK-YARD AND TRANSIT COMPANY.

1. A complainant is not entitled to an interlocutory injunction when the legal right on which he rests his claim depends on a disputed question of law.

2. Where, on an application for a preliminary injunction, an order to show cause is granted, with an *ad interim* injunction order, and the court subsequently refuses an injunction, on the ground that the law on which complainant's right depends, is unsettled, the injunction order will not be continued in force pending the appeal.

On application to continue *ad interim* injunction order pending an appeal.

*Mr. Flavel McGee* and *Mr. Joseph D. Bedle*, for motion.

*Mr. Leon Abbett, contra.*

VAN FLEET, V. C.

The injunction asked for in this case having been refused, the complainants now ask that the *ad interim* injunction order, made when the order to show cause why an injunction should not issue was granted, requiring the defendants to receive from the complainants, live stock carried over the complainants' road, and consigned for delivery at the defendants' yard, be continued in force until the appeal, which the complainants intend to take from the order denying an injunction, shall have been heard and decided. The court refused a preliminary injunction, because the right on which the complainants found their claim to such writ is, as a matter of law, entirely unsettled; indeed, because it is, as yet, wholly unknown whether the right, on which the complainants rest their claim to the interference of this court, will ever

receive recognition from that tribunal of this state, whose exclusive duty it is to settle disputed questions as to the existence and extent of legal rights.

The defendants have, under legislative authority, erected yards and other structures at Jersey City, for the reception, safe-keeping, feeding, slaughtering and sale of live stock, and for the past five years have carried on there a general stock-yard and market business.    Until recently the defendants have received from the complainants all the live stock carried over the road of the complainants, and consigned for delivery at the defendants' yards, but, on the 19th of August last, they gave the complainants notice that they would not, in the future, receive any live stock from them.    The complainants have no connection by rail with the defendants' yards.    The eastern terminus of their road is at Hoboken, distant over a mile from the defendants' yards.    The complainants claim, that it is the legal duty of the defendants to receive, from them, live freight carried over their road, and consigned for delivery at the defendants' yards, and that the only remedy, which will give them complete and adequate protection against the irreparable loss which must result to them from an obstinate and prolonged continuance of this breach of duty, is an injunction compelling the defendants to do their duty.    The complainants are before the court simply in their character as common carriers.    They do not own the stock which they ask the court to compel the defendants to receive.    The service which the defendants render, after they have received live stock, is not rendered to the common carrier who transported the stock to their yards, but to its owner.    They keep, feed, slaughter and sell.    In none of these matters have the complainants the slightest concern.    Hence, it would seem to be entirely clear, that if the defendants are under any duty to the complainants, it is simply a duty to receive such stock as the complainants may desire to deliver.    For the simple service of receiving stock, it is not pretended, that the defendants make any charge, or receive any compensation, or that they have any authority, by their charter, to demand compensation for such service; so that if the defendants are under the duty which the complainants claim, and

upon the violation of which they rest their right to an injunction, it is a duty which the law imposes as a gratuity to the complainants. No common law court, whose judgment this court is bound to accept as an authoritative exposition of the law, has, as yet, decided that the defendants are under any such duty to the complainants. And until it has been decided, by such a tribunal, that the complainants possess the legal right they claim, this court cannot grant a preliminary injunction for the protection of such right, without exceeding its jurisdiction, for the principle is authoritatively settled in this state, that a complainant is not entitled to a preliminary injunction, when the legal right on which he rests his right to such writ, depends on a disputed question of law.

The duties of corporations carrying on a business, similar to that in which the defendants are engaged, to common carriers engaged in the transportation of live freight, are wholly undefined. I know of no instance in which they have been the subject of judicial investigation. None were cited on the argument of either the present application or on the application for the injunction. This condition of the law is unquestionably fatal to the present application. For if by the judgment of the court the complainants are not entitled to a preliminary injunction, it is impossible for me to see any rational ground, upon which an order continuing the *ad interim* injunction order in force could be placed. By making such an order, the court would place itself in this absurd position : first decide that the complainants were not entitled to an injunction, and then, after the correctness of its decision had been challenged by an appeal, decide that because an appeal had been taken, the complainants were entitled, at least pending the appeal, to what, in the first instance, it had decided they were not entitled to.

But further discussion is unnecessary. This matter is at rest. Chancellor Runyon, in dealing with a similar application, in a case identical in its material facts with the one under consideration, has stated the considerations which must, in such cases, control the judgment of the court, so lucidly and forcibly, that, but for the unusual tenacity with which this application has

been pressed, I should have felt entirely justified in deciding it by a simple citation of his opinion. He said, in substance, that there was a single consideration which he regarded as entirely conclusive. The complainants have never been in possession of any judgment of this court in favor of their claim to interlocutory interference. No injunction was granted to them. On the filing of their bill, they obtained, not an injunction, but an order to show cause why an injunction should be issued, with an *ad interim* injunction order, but the injunction order was only granted to give the court an opportunity, without prejudice to the rights claimed by the complainants by the delay necessary for the inquiry, to inquire, on notice, whether there ought to be any preliminary injunction or not, and to enable the court to be careful, circumspect and regardful of the rights of both parties in the use of the injunction power. The fact that such order was granted gave the party obtaining it no right to its continuance, in case his application was denied, and he appealed from the order denying his application, for it was granted simply to keep affairs in their original condition, while the inquiry was pending, whether or not an injunction should issue. It was merely a prudential interference, limited to the time when the court should reach a conclusion as to the propriety of granting or denying the injunction sought. It appears to me too obvious to admit of any dispute or argument, that it is the duty of the court, in such a case, where it concludes, on such inquiry, that there should be no preliminary injunction, to refuse to continue the injunction order. If the argument of the complainants, on this point, is well founded, such order, though followed by the clearest conviction on the part of court, after hearing the order to show cause, that an injunction ought not to be granted, must be continued because of the mere fact that an appeal has been taken. This would, in effect, be putting in the complainants' hands, to a certain extent at least, the power of continuing the force of the order. *Central R. R. Co. of N. J.* v. *Standard Oil Co., 6 Stew. Eq. 372.*

On the argument of the present application, several cases, decided by circuit courts of the United States were cited, in which

it had been held, that a railroad corporation was under a legal duty, as a common carrier, in the absence of either statutory regulation or contract obligation, to furnish persons engaged in the express business, with proper facilities, in the way of cars and transportation, for the transaction of their business, and that a court of equity might, in the rightful exercise of its general jurisdiction, in a case where it was made to appear that a railroad corporation had refused to perform this duty, under such circumstances as to cause irreparable loss, compel its performance by injunction, granted on an interlocutory application. These cases were not cited as direct precedents for the decision of the case in hand, but as establishing principles which the court, should, by analogy, for the purpose of preventing a great wrong, which would otherwise be practically irremediable, apply in its solution. The cases, however, are not analogous. They differ widely in a very vital particular. The duties of a railroad corporation, as a common carrier, are settled and well defined, but the duties of the defendants to common carriers are wholly undefined. They have never been the subject of judicial determination. But the cases cited can no longer be regarded as authorities. They have been overruled. Three of them, viz.: *Southern Express Co.* v. *St. Louis, Iron Mountain and Southern R. R. Co.; Southern Express Co.* v. *Memphis and Little Rock R. R. Co.,* and *Adams Express Co.* v. *Missouri, Kansas and Texas R. R. Co.,* were carried to the supreme court of the United States and there reversed, and the bills dismissed, the court holding that, in the absence of statutory regulation or a contract fixing and defining the rights and obligations of the parties, no judicial relief could be given. The supreme court said, that the courts below had attempted to make such an arrangement for the business intercourse between the parties, as, in the opinion of the courts, the parties should have made for themselves, and that in doing so the courts had transcended their power. " The regulation of matters of this kind," says the court, " is legislative in its character, not judicial." *Express Cases, 117 U. S. 1.*

The complainants' application must be denied, with costs.