On May 11th, 1926, an injunctive order was allowed restraining the defendants from certain acts during the progress of a strike at the complainant's mills. On May 27th, 1926, notice of this motion was served upon the complainant's solicitors of record, by leaving a copy thereof with someone in charge of the office. There was some slight irregularity in the service, but no point has been made thereof, presumably for the reason that any such objection would be grossly technical. Upon the day mentioned in the notice, to wit, June 1st, 1926, counsel for the proponents appeared in support of the motion, but no one appeared to represent the respondent. It now transpires that while complainant's counsel was in communication, or attempted communication, with one of the counsel (but not the solicitor of record) for the defendants for the purpose of securing a continuance, the solicitor for the defendants, together with another associate counsel having no knowledge of the attempt on the part of the complainant's counsel to secure a continuance, went on with the motion. Before the draft of order for which the defendants ask had been presented for signature, a representative of complainant's counsel informed the court of the inadvertence which explained their absence, and the matter was then laid *Page 698 
over until the following motion day, whereupon argument was heard, as it would have been heard the week before except for the fact just explained.
The reason advanced by the proponents of the motion, is a failure upon the part of the complainant to take out a subpoenaad respondendum and to cause the same to be served, as required by the practice adopted in this court. As early as Corey v.Voorhies, 2 N.J. Eq. 5, the chancellor pointed out that Chancellor Williamson, in the April term, 1829, said: "That a party must take out a subpoena on taking out an injunction, and that he would dissolve an injunction if that practice was not followed." The same rule was laid down and followed in West v.Smith, 2 N.J. Eq. 309. In Lee v. Cargill, 10 N.J. Eq. 331,
the rule was again enforced and the practice declared to be that the subpoena must be taken out with the injunction and a return made within the time prescribed by the rules. This rule has been reiterated and acted upon by this court down to at least the opinion of the present chancellor, in Allman v. UnitedBrotherhood of Carpenters and Joiners of America, 79 N.J. Eq. 150,
and very recently the court of errors and appeals, noticed the rule and quoted from the last-mentioned case in ReliableCloak Co. v. Sorbella, 98 N.J. Eq. 354. But in the lastnamed case the only question decided was that the penalty does not go so far as to work a dismissal of the bill, but only a dissolution of the interlocutory injunction. The purpose of the practice is, of course, obvious, and intended to prevent an unfair advantage being taken of a most drastic remedy, secured only upon exparte proofs, and usually all that the complainant desires in the way of protection, whether he is entitled thereto or not. It would be a most unfair thing if he then might be permitted to remain quiescent after he had placed his adversary at a disadvantage or compel the latter to do something which the law does not require him to do, namely, file an answer (Allman Case,supra — at p. 154) or never be given an opportunity to effectually disprove the complainant's case at *Page 699 
final hearing. Not only this form of delay but any lack of due diligence on the part of complainant is ground for nullifying the injunction. Schalk v. Schmidt, 14 N.J. Eq. 268. With these considerations in mind, it will be seen that the rule is not a harsh one, and while it is, of course, technical, it is a very necessary practice to secure justice and fair treatment to defendants and should be insisted upon in all cases.
In the present motion it is necessary to consider both aspects of the rule of practice under consideration. It will have been observed that the rule requires two things — (1) that the subpoena be taken out with the injunction, and (2) that it be served and returned within the time required for a return of the injunction. With the first branch of the rule there is no difficulty, because the undisputed proofs disclose that the subpoena was prepared at a time anterior to the return of the order to show cause and, consequently, before the injunctive order was advised. Inasmuch as it is no longer necessary for application to be made to the chancellor for writs of subpoena, but they are supplied in quantities to members of the bar as officers of the court, it is fair to say that the filling in and signing of the form by the solicitor is the equivalent of the ancient issuing of the process, in analogy to the practice at law fixed in the case of Updike v. Ten Broeck, 32 N.J. Law 105.
In short, the preparation of the writ satisfies the first condition of the rule, if it is still applicable at all. It is the provision to be examined next that is of prime importance, because if the service and return are timely, the date of the subpoena is of little or no consequence.
The second of the requirements of the rule of practice under consideration is not quite so simple. Originally, there was a practice permitting the issuance of the writ upon an ex parte
application. 2 Dan. Ch. Pl. Pr. [*]1666. That, of course, was later succeeded by bridging temporary emergencies through the instrumentality of an ad interim restraint contained in an order to show cause which, by its terms, fixed a day for the motion at which the respondent *Page 700 
was given an opportunity to present his preliminary proofs. And still later the present practice was adopted of providing a still earlier opportunity for the defendant to be heard, if he so desires, by permitting an application to be made upon notice to the complainant, to dissolve the restraint. But since the decision of any of the cases herein mentioned, or any others with which I am familiar, section 10 of the act of 1915 was adopted (P.L. 1915 p. 186) declaring that no writ of injunction shall issue unless specially directed, the consequence, of course, is that the strict letter of the rule as to the second branch cannot be literally carried out, because, being no writ to be returned by the sheriff, there can be no "time required for the return" thereof. No longer is a formal writ issued out of the office of the clerk and served upon the enjoined party, but the successful applicant serves upon the adversary party or parties a certified copy or certified copies of the injunctive order, and it instantly becomes operative.
In this state of the practice, light is thrown upon the subject under consideration by a reference to the two hundred and seventeenth rule of this court, which provides that writs of injunction shall be returnable one month after their teste. In the very nature of things, some greater or lesser time would be required in any case, for the service and return of the injunction, or, in our modern practice, injunctive order, whether the number of persons to be bound thereby were small or, as in the present case, very large, numbering over eighty. There is no rule or precedent of which I am aware that fixes the time within which this service must be effected; and, therefore, it would appear to be not unfair that the party securing the order should have at least as long a period of time in which to make service as would have been the case when the rule just quoted was adopted, if the instrument to be served had been the formal writ instead of the simpler practice of having the order stand for the writ. Inasmuch as the complainant herein was stayed by the service of the notice of this motion on May 27th (of course, no service could have been effected until the determination of *Page 701 
the motion), it will be allowed for service of the subpoena and its return, a like period of time to that which it had to make service at the time of the serving of the notice just mentioned. This additional period of time shall be computed from June 11th, upon which day this memorandum should reach the attention of the respective counsel.
While unnecessary to notice one remaining point made on behalf of the respondent perhaps it should be noticed, in view of the length at which it was argued. Upon the argument of the motion on the return of the order to show cause why a preliminary injunction should not be allowed, the experienced counsel for the complainant asked that counsel for the defendants should be required to disclose for whom he and his associates appeared. In reply, the latter said: "All of the defendants are in court." From this, it is argued that there was a general appearance, obviating the necessity of statutory process. This, of course, cannot be so. A defendant can waive the service of process and file his answer voluntarily, but if he does so it must be done unequivocally. An appearance such as these is not general. It only subjects the respondent to the jurisdiction of the court for the purpose of the motion. To argue that an appearance, required by the terms of an order to show cause, to contest an interlocutory motion subjects the respondent to the jurisdiction generally without anything more, would completely disarrange the practice established by the legislature. Nowhere to my knowledge has any authority so declared or even discussed the proposition. In fact, for the purpose of final adjudication and award of relief, the suit is not even commenced until the service of the subpoena. Hermann v. Mexican Petroleum Corp., 85 N.J. Eq. 367.
Counsel has confused the present situation with the rule to be applied where a defendant appears without preceding permission obtained, upon the conditions imposed, for the single purpose of attacking the jurisdiction of a court of equity. 1 Dan. Ch. Pl. Pr. [*]536 et seq.; Groel v. United Electric Co., 69 N.J. Eq. 397.
There was a further point made that suits to enjoin strikes never, or almost never, go to final hearing and, therefore, *Page 702 
there is no necessity, after the granting of the injunction, to serve process for appearance. It is hardly to be conceived that the chancellor in the Allman Case, supra, would have devoted so much time to a discussion of the subject of this decision unless the regular practice obtains in labor cases. It is true that in a majority of them the strike is settled before final hearing can be reached and no further proceedings are taken, but this does not alter the requirements in the orderly conduct of suits in equity.
In my opinion the motion should be denied, and I will so advise the chancellor.