IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Kobal, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Workers' Compensation | : | |
| Appeal Board (Mountain | : | |
| Intermodal, Inc.), | : | No. 2111 C.D. 2014 |
| Respondent | : | Submitted: May 22, 2015 |

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY                                    FILED:  September 9, 2015

John Kobal (Claimant) challenges the order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) grant of the termination petition of Mountain Intermodal, Inc. (Employer) and the dismissal of Claimant's penalty petitions.

Claimant worked as a truck driver for Employer.  On December 24, 2010, Claimant suffered a work-related back injury when he slipped as he climbed into a trailer.  After Employer issued a notice of workers' compensation denial, Claimant petitioned for benefits on January 22, 2011, and alleged that he suffered neck pain, low back pain, and right arm/hand numbness as a result of the December 24, 2010, injury.  Employer denied the allegations.

On August 23, 2011, the parties stipulated that Claimant suffered a "cervical and lumbar sprain and strain" in the course of his employment on December 24, 2010. Stipulation of Facts, August 23, 2011, Paragraph No. 4 at 1; Reproduced Record (R.R.) at 11. The parties further agreed that Claimant was entitled to compensation at the rate of $845.00 per week based on an average weekly wage of $1,395.55, commencing on December 24, 2010. The parties further stipulated that Employer was responsible for all reasonable and necessary medical expenses that were causally related to the work injury.

By order dated August 31, 2011, the WCJ stated that the claim petition was resolved by the stipulation and that the parties were bound by the terms and conditions of the stipulation.

On September 13, 2011, Employer petitioned to terminate benefits and alleged that Claimant was fully recovered from the work-related injury.

On October 21, 2011, Claimant petitioned for penalties and alleged that Employer had not paid workers' compensation benefits as required by the stipulation. Claimant sought penalties of $1,500.00.

On November 3, 2011, Employer petitioned to modify benefits and alleged that work was generally available for Claimant in his labor market which meant that Claimant had a residual earning capacity.

On April 19, 2012, Claimant petitioned for penalties and alleged that Employer refused to pay for Claimant's diagnostic tests and treatment in violation of the stipulation. The four petitions were consolidated before the WCJ.

In support of its termination petition, Employer presented the deposition testimony of John Petolillo, Jr., D.O. (Dr. Petolillo), a board-certified orthopedic surgeon. Dr. Petolillo examined Claimant on May 3, 2011, took a history, and reviewed medical records. Dr. Petolillo reached the following diagnosis within a degree of medical certainty:

> It was my opinion based upon my review of the medical records that I couldn't state that he sustained a work related injury simply because he did not have on set [sic] of symptoms to at least 48 hours after the injury.
>
> It was my opinion that any significant cervical or lumbar soft tissue injury would have manifest[ed] well before that period of time.
>
> I went on to state that if in fact he did sustain a soft tissue injury such as a sprain or strain type of injury, I would expect that that would have resolved within a 12 week period of time with little or no treatment. And based upon my physical examination, I found no evidence of ongoing cervical or lumbar soft tissue injury.

Deposition of John Petolillo, Jr., D.O., January 25, 2012, (Dr. Petolillo Deposition) at 17; R.R. at 30.[1]

---

[1]  Certain pages of the Reproduced Record are not numbered or are not numbered clearly. This Court is able to determine that page "17" of Dr. Petolillo's Deposition is page No. 30 of the Reproduced Record.

Dr. Petolillo also testified within a reasonable degree of medical certainty that Claimant could return to work without restrictions and was fully recovered from the work-related injury. Dr. Petolillo Deposition at 17-18; R.R. at 30-31.[2]

Claimant testified that his injuries included his lower back and neck with pain "going into my shoulders and down my arms." Notes of Testimony, May 15, 2012, (N.T.) at 11; R.R. at 143. He explained that he did not seek treatment because "everything's being denied." N.T. at 11; R.R. at 143. Claimant testified that he did not get his benefits paid until approximately two months after the WCJ approved the stipulation. Claimant identified a check dated November 21, 2011, in the amount of $30,381.37 which represented Claimant's benefits from the date of the injury through October 5, 2011. He also presented a check dated April 12, 2012, in the amount of $1,014.00 which represented Claimant's benefits from February 23, 2012, to April 4, 2012. N.T. at 13-15; R.R. at 145-147. Claimant testified that his symptoms were getting worse and consisted of the following:

> My difficulties are I can't stand for a very long time. If I start moving around a lot, moving, using my arms a lot, I get the pains up to my neck and my arms, numbness, grip, like just trying to grab things, muscle spasms. At night when I'm trying to lay [sic] back . . . it spasms. I

---

[2] Employer also presented the deposition testimony of Michael J. Smychynsky (Smychynsky), CRC [Certified Rehabilitation Counselor] in support of its modification petition. Smychynsky testified regarding jobs in the labor market that he found that were suitable for Claimant based on his vocational evaluation and a labor market survey. Because the WCJ did not make any findings concerning Smychynsky's testimony and found the modification petition moot, it is not necessary for this Court to address Smychynsky's testimony in any greater detail.

have lower back pain and my leg. If I walk for just a little bit, it just starts giving out and I can't walk.

N.T. at 15-16; R.R. at 147-148.

Claimant admitted that his treating physician, Guy Michael Fasciana, M.D. (Dr. Fasciana), a primary care physician, sometimes confused him and his father. N.T. at 17-18; R.R. at 149-150. On cross-examination, Claimant admitted that he received interest on the money owed in the check that covered December 24, 2010, through October 5, 2011. N.T. at 22; R.R. at 154. He received checks weekly from November 21, 2011, until February 28, 2012. He then did not receive any benefits until the April 12, 2012, check. N.T. at 22-23; R.R. at 154-155.

Claimant presented the deposition testimony of Dr. Fasciana, a primary care physician. Dr. Fasciana treated Claimant twice after the work injury in May 2011, and on October 10, 2011. He initially diagnosed him with a "whiplash-type injury in his cervical spine and a lumbar strain." Deposition of Guy Michael Fasciana, M.D., March 28, 2012, (Dr. Fasciana Deposition) at 7-8; R.R. at 101-102. After the second examination Dr. Fasciana diagnosed Claimant with cervicalgia or neck pain and lumbar radiculopathy. Dr. Fasciana Deposition at 8; R.R. at 102. Dr. Fasciana's complete diagnosis was "Failed back, chronic pain syndrome, lumbar strain, possible lumbar disc herniation . . . lumbar radiculopathy, and also cervical strain or whiplash-type injury." Dr. Fasciana Deposition at 10; R.R. at 104. He attributed these conditions to the work incident of December 24, 2010. Dr. Fasciana Deposition at 10; R.R. at 104. Dr. Fasciana testified that he would place restrictions on Claimant because "I don't know exactly what's going on in his back. I don't know if he's a surgical candidate. We

5

need the MRI to tell us that." Dr. Fasciana Deposition at 11; R.R. at 105. Claimant told him that he could not obtain an MRI because his insurance would not pay for it. Dr. Fasciana Deposition at 9; R.R. at 103. Based on when he last saw Claimant, Dr. Fasciana testified within a reasonable degree of medical certainty that Claimant could not perform his regular duties. Dr. Fasciana Deposition at 11; R.R. at 105.

The WCJ granted Employer's termination petition and dismissed Claimant's penalty petitions. The WCJ dismissed as moot Employer's modification petition. The WCJ dismissed the penalty petitions because Claimant's past due wage benefits and medical expenses were paid. The WCJ made the following relevant finding of fact:

> 11. Although Dr. Fasciana did not feel that Mr. Kobal was capable of returning to his regular work he did not pronounce him as totally disabled. He believed that Mr. Kobal would be capable of performing some type of sedentary duty employment. Although we respect that opinion and we think that Dr. Fasciana has conscientiously treated Mr. Kobal it is now approximately two years since his injury and he has not required any major or severe medical treatment such as surgery. As a result, we are inclined to accept the opinion of the orthopedic surgeon, Dr. Petolillo who examined him on May 3, 2011 and found Mr. Kobal to be completely and fully recovered from his work injury as of that date. We accept Dr. Petolillo's opinion because there is nothing to indicate that Mr. Kobal suffered any more than strains or sprains in his neck and low back from which he should now be recovered.

WCJ's Decision, January 30, 2013, Finding of Fact No. 11 at 2.[3]

Claimant appealed to the Board which affirmed.

Claimant contends that the Board erred when it affirmed the WCJ's grant of the termination petition and denial of the penalty petitions.[4]

## I.  Termination Petition.

Initially, Claimant contends that the Board erred when it affirmed the WCJ's grant of Employer's termination petition.

The employer bears the burden of proof in a termination petition proceeding to establish that the work injury has ceased.  In a case where the claimant complains of continued pain, this burden is met if an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury.   Udvari v. Workmen's Compensation Appeal Board (US Air, Inc.), 705 A.2d 1290, 1293 (Pa. 1997).

---

[3]     Claimant omitted this page of the WCJ's Decision from the Reproduced Record and his brief.

[4]     This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated.  Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation), 589 A.2d 291 (Pa. Cmwlth. 1991).

Here, Employer's medical witness, Dr. Petolillo, credibly testified that Claimant was fully recovered, could return to work without restrictions, and had no objective complaints related to the work incident at the time of the examination.

The WCJ, as the ultimate finder of fact in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. General Electric Co. v. Workmen's Compensation Appeal Board (Vasamaki), 593 A.2d 921 (Pa. Cmwlth.), petition for allowance of appeal denied, 600 A.2d 541 (Pa. 1991). This Court will not disturb a WCJ's findings when those findings are supported by substantial evidence. Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock), 667 A.2d 262 (Pa. Cmwlth. 1995).

Employer met its burden under Udvari. Claimant asserts that if an MRI had been performed, it would have strengthened Dr. Fasciana's testimony. The Board noted that it saw no reason why any failure to pre-authorize medical treatment would change the fact that the WCJ found Claimant to be fully recovered based on Dr. Petolillo's testimony. This Court agrees. Critically, it is unclear on the record that a request for an MRI was ever presented to Employer.

## II. Penalty Petitions.
## A. Compensation Payments Due from December 24, 2010, through October 5, 2011.

Claimant next contends that the Board erred when it affirmed the denial of Claimant's penalty petitions. With respect to the penalty petition for failure to pay Claimant's compensation benefits, Claimant asserts that Employer

8

violated Section 428 of the Workers' Compensation Act (Act)[5] because it failed to pay Claimant compensation benefits from August 31, 2011, until November 21, 2011, which covered the benefits period from December 24, 2010, through October 5, 2011.

Section 428 of the Act, 77 P.S. §921, provides in pertinent part:

Whenever the employer, who has accepted and complied with the provisions of section three hundred five, shall be in default in compensation payments for thirty days or more, the employe or dependents entitled to compensation thereunder may file a certified copy of the agreement and the order of the department approving the same or of the award or order with the prothonotary of the court of common pleas of any county, and the prothonotary shall enter the entire balance payable under the agreement, award or order to be payable to the employe or his dependents, as a judgment against the employer or insurer liable under such agreement or award.

In addition, Section 430(b) of the Act, 77 P.S. §971(b), which provides:

Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas shall be subject to a penalty as provided in Section 435, except in the case of payments terminated as provided in section 434.

---

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §921. This section was added by the Act of June 26, 1919, P.L. 642.

The assessment of penalties, as well as the amount of penalties imposed, is discretionary, and absent an abuse of discretion by the WCJ, this Court will not overturn the WCJ's decision on appeal. Westinghouse Electric Corporation v. Workers' Compensation Appeal Board (Weaver), 823 A.2d 209 (Pa. Cmwlth. 2003). "An abuse of discretion is not merely an error of judgment but occurs, *inter alia*, when the law is misapplied in reaching a conclusion." Id. at 213-214. A judge's ruling on a penalty petition is to be reversed only if the judge has abused his discretion and misapplied the law. Westinghouse.

Here, Claimant alleges Employer violated the Act when it unilaterally failed to pay compensation benefits to Claimant following the August 31, 2011, stipulation. Employer did not pay Claimant for benefits that accrued from the date of his injury, December 24, 2010, through October 5, 2011, until November 21, 2011. The benefits that were due as of August 31, 2011, were paid eighty-one days late in excess of the thirty days set forth in Section 428 of the Act.[6]

Claimant asserts that Employer had a thirty day grace period after the signing of the stipulation before benefits were due. However, in Snizaski v. Workers' Compensation Appeal Board (Rox Coal Company), 891 A.2d 1267 (Pa. 2006), our Pennsylvania Supreme Court stated that even though it was argued that Section 428 of the Act gives employers a thirty day grace period to pay a compensation award without the assessment of penalties, Section 435 of the Act[7], 77 P.S. §991, authorizes the imposition of penalties without the provision of the

---

[6]     Claimant did receive interest on the past due amount.
[7]     This section was added by the Act of February 8, 1972, P.L. 25.

grace period. The Supreme Court reasoned that a penalty was theoretically available for an employer's refusal to pay compensation if only for a single day, though the Supreme Court stated that penalties should be linked to some discernible and avoidable wrongful conduct.

There is nothing in the record to indicate why Employer did not pay the benefits in a timely manner. In North Pittsburgh Drywall Company v. Workers' Compensation Appeal Board (Owen), 59 A.3d 30 (Pa. Cmwlth. 2013), penalties were awarded when North Pittsburgh Drywall Company delayed compensation payments for twenty months. In Varkey v. Workers' Compensation Appeal Board (Cardone Industries), 827 A.2d 1267 (Pa. Cmwlth. 2003), penalties were awarded after a delay of six weeks for compensation payments. Further, in Essroc Materials v. Workers' Compensation Appeal Board (Braho), 741 A.2d 820 (Pa. Cmwlth. 1999), this Court affirmed the imposition of penalties when Essroc Materials paid benefits on a quarterly rather than weekly basis.

Here, Employer made payments far in excess of the six weeks in Varkey, at approximately the same time as at least some of the benefits in Essroc, and far less than the twenty months in North Pittsburgh Drywall. The WCJ did not award a penalty because he reasoned that the past due benefits were ultimately paid albeit late. However, in the cases mentioned, the benefits were ultimately paid and that did not preclude the imposition of penalties. Given that Employer gave no reason for the late payments and the length of time involved, this Court must conclude that the WCJ abused his discretion when he failed to award penalties for

11

this delay in the payment of benefits. This Court will remand to the Board with instructions for the Board to remand to the WCJ for an award of penalties.[8]

## B. Compensation Payments Due from February 23, 2012, through April 4, 2012.

Employer also did not pay Claimant's workers' compensation disability benefits covering the period from February 23, 2012, through April 4, 2012, until April 12, 2012. Those benefits were paid between eight and forty-nine days late. The WCJ found that while there was a violation of the Act, nevertheless Claimant received all benefits due him so that he was not entitled to an award of penalties. Given the discretion awarded the WCJ in the determination of an award of penalties and the limited amount of delay for most of these payments, this Court does not find that the WCJ abused his discretion.

## C. Payment of Medical Expenses.

With regard to the second penalty petition, Claimant argues that Employer violated Section 306(f.1) of the Act, 77 P.S. §531, which provides that an employer should provide payment for reasonable work-related surgical and medical procedures. The failure to pay medical bills, without filing a review petition violates the Act. McLaughlin v. Workers' Compensation Appeal Board (St. Francis Country House), 808 A.2d 285 (Pa. Cmwlth. 2002).

Section 306(f.1) of the Act, 77 P.S. §531, provides in pertinent part:

---

[8] Employer asserts in its brief that its insurer became insolvent and that it is now insured by the Workers' Compensation Security Fund which is not subject to penalties. However, there is nothing in the record to indicate the insolvency, so it is not properly before this Court.

12

(1)(i) The employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed. . . .

. . . .

(2) Any provider who treats an injured employe shall be required to file periodic reports with the employer on a form prescribed by the department which shall include, where pertinent, history, diagnosis, treatment, prognosis and physical findings. The report shall be filed within ten (10) days of commencing treatment and at least once a month thereafter as long as treatment continues. The employer shall not be liable to pay for such treatment until a report has been filed.

. . . .

(5) The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). The nonpayment to providers within thirty (30) days for treatment for which a bill and records have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment must be made timely for any treatment or portion thereof not in dispute. A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment. If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6), the period for filing an application for fee review shall be tolled as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph. Within thirty (30) days of

the filing of such an application, the department shall render an administrative decision.

(6) Except in those cases in which a workers' compensation judge asks for an opinion from peer review under section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the department may not engage in such utilization review.

Under Section 306(f.1)(5) of the Act, 77 P.S. §531(5), an employer is required to pay a claimant's medical bills within thirty days of receiving them on the prescribed forms. Under the Medical Cost Containment Regulation, 34 Pa. Code §127.201, providers must submit requests for payment of medical bills on either an HCFA Form 1500 or the UB92 Form. Another regulation, 34 Pa. Code §127.202, provides that employers are not required to pay for any medical treatments billed until a bill is submitted on one of these forms.

If the employer believes that the medical bills are not causally related to the work injury, the employer faces the possibility of a penalty if the WCJ determines that the bills are causally related to the work-related injury. Listino v. Workmen's Compensation Appeal Board (INA Life Insurance Company), 659

14

A.2d 45, 48 (Pa. Cmwlth. 1995). The WCJ will only grant the penalty petition if the claimant establishes a violation and the employer does not prove that it did not violate the Act. Shuster v. Workers' Compensation Appeal Board (Human Relations Commission), 745 A.2d 1282 (Pa. Cmwlth. 2000), *petition for allowance of appeal denied*, 781 A.2d 151 (Pa. 2001).

Here, Claimant argues that Employer violated the Act because it did not authorize payment for an MRI. On the other hand, Employer argues that Claimant never submitted any unpaid medical bills to the WCJ. The WCJ denied the penalty petition because all medical bills were paid.

In his testimony Dr. Fasciana stated that Claimant "told me that he couldn't get the study [MRI] done because the insurance company told him they [sic] weren't going to cover it." Dr. Fasciana Deposition at 8-9; R.R. at 102-103. That statement was corroborated to some extent by Claimant who stated, "I'm having problems with them [sic] denying everything. I'm going to the doctors, the doctors want to schedule MRIs and tests and that's being denied. They [sic] will not do it until they [sic] get that okay they know they're [sic] going to get paid." N.T. at 12.

A review of the record supports the WCJ's conclusion. There are no unpaid bills that were submitted to Employer.[9] The WCJ properly concluded that

---

[9] Though Claimant submitted into evidence a UHS Work Comp Procedure Order Sheet No Payment Guarantee which states that UHS [United Health Services] would not guarantee payment for an MRI ordered by Dr. Fasciana because "the IME doctor has stated that the work comp injury has been resolved," UHS Work Comp Procedure Order Sheet, December **(Footnote continued on next page…)**

15

Claimant failed to establish a violation of the Act. Given the scant record on this issue, the WCJ did not abuse his discretion when he denied this petition.

### III. Summary.

Accordingly, this Court affirms in part and reverses and remands in part. This Court affirms with respect to the grant of the termination petition, the denial of Claimant's penalty petition with respect to the non-payment of benefits from February 23, 2012, through April 5, 2012, and the denial of the penalty petition that concerned the alleged non-payment of medical expenses. This Court reverses the denial of the penalty petition with respect to the non-payment of benefits after the August 31, 2011, stipulation and remands this matter to the Board with instructions to remand to the WCJ for the WCJ to impose penalties.

_____
BERNARD L. McGINLEY, Judge

---

**(continued…)**

6, 2011, at 1, there is nothing to indicate that Claimant submitted a bill for the procedure to Employer or that the provider submitted a bill to Employer on the required forms. Neither Claimant nor the Provider followed the utilization review process.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Kobal,
              Petitioner

        v.

Workers' Compensation
Appeal Board (Mountain
Intermodal, Inc.),
              Respondent

:
:
:
:
:
:
:
:
:
:  No. 2111 C.D. 2014
:

## **O R D E R**

AND NOW, this 9th day of September, 2015, this Court affirms in part and reverses and remands in part. This Court affirms with respect to the grant of the termination petition, the denial of John Kobal's penalty petition with respect to the non-payment of benefits from February 23, 2012, through April 5, 2012, and the denial of John Kobal's penalty petition concerning the alleged non-payment of medical expenses. This Court reverses the denial of the penalty petition with respect to the non-payment of benefits after the August 31, 2011, stipulation and remands this matter to the Board with instructions to remand to the WCJ for the WCJ to impose penalties. Jurisdiction relinquished.

_____
BERNARD L. McGINLEY, Judge